Ilo **VANDERBOOM** et al., Appellants,

v.

Sam **SEXTON**, Jr., James S. Hall, Charles H. Smith, Austin Gatlin, Erma S. Gatlin, Diamond G Ranch, Inc., an Arkansas Corporation, Texas Capital Corporation, a Texas Small Business Investment Company, Appellees.

Nos. 19682–19684.

United States Court of Appeals, Eighth Circuit.

Feb. 24, 1970.

Rehearing Denied March 20, 1970.

William M. Stocks of Bethell, Stocks, Callaway & King, Fort Smith, Ark., on brief for appellants.

Philip S. Anderson, Jr., Little Rock, Ark., for appellee James S. Hall.

Don A. Smith, Fort Smith, Ark., for appellees Gatlin, Diamond G Ranch, Inc. and Texas Capital Corp.

Edward L. Wright, Little Rock, Ark., Thomas Harper, and Sam Sexton, Jr., Fort Smith, Ark., were on the brief with Anderson and Smith.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

GIBSON, Circuit Judge.

These are appeals from a summary judgment verdict rendered in the United States District Court for the Western District of Arkansas against plaintiffs-appellants Vanderboom, et al. The complaint in the District Court stated two causes of action, one for common law fraud and deceit under Arkansas law, jurisdiction assertedly resting on diversity of citizenship, and the other a federal cause of action for violations of the securities laws, essentially 15 U.S.C. § 78j, which is § 10 of the Securities Exchange Act of 1934, and Rule 10b–5 thereunder.

The District Court ruled on December 5, 1968 that the common law fraud complaint was not cognizable because of lack of complete diversity between the parties and that this was not a proper case for the utilization of the federal courts'

power of pendent jurisdiction. The federal cause of action was dismissed on summary judgment on January 24, 1969 on the ground that it was barred by the applicable state statute of limitations.[1] It is from these two rulings that these appeals are taken.

An extended discussion of the factual context of this case can be found in City National Bank of Fort Smith v. Vanderboom, 422 F.2d 221, decided the 20th day of February, 1970, and thus we will set forth only those facts essential to an adequate explication of this case.

The South Dakota investors (being all of the investors except Investors Thrift Corporation), and Investors Thrift Corporation (ITC), an Arkansas corporation, filed this action against Sam Sexton, Jr., an attorney, Jim Hall, former vice-president of the City National Bank of Fort Smith, Arkansas, and Huey Smith as sellers of the stock in American Home Builders, Inc. (AHB). Also included in their complaint as defendants were Austin Gatlin, a former owner of Peoples Loan and Investment Company (PL&I), Gatlin's wife, the Diamond G Ranch, Inc., a Gatlin owned corporation, and Texas Capital Corporation, formerly the principal creditor of AHB. The complaint alleged that all of the above defendants aided, abetted and conspired to defraud the South Dakota investors and ITC in connection with their purchase of the AHB stock for a total consideration of $947,300.00.[2]

Maurice Markham, president of ITC, signed an option agreement under date of September 9, 1965, providing for the purchase by appellant ITC of the capital stock of AHB which owned the controlling stock interest (68%) of PL&I. One hundred fifty thousand dollars was paid at the signing of this option, $157,500.00 at the date the option was exercised on November 2, 1965, and additional payments of $400,000.00 and $300,000.00 were made later to Texas Capital Corporation, a creditor of AHB.

All of the South Dakota appellants owned significant amounts of non-voting stock in ITC, but they did not own all of the capital stock of ITC. They dispute whether Markham should be considered as their agent at the time of the option agreement, but we think this contention is clearly without merit.[3] The option was to extend until January 10, 1966, but was exercised on November 2, 1965, and all payments were made and all stock delivered by January 10, 1966. The complaint in this case was filed July 18, 1968.

## STATUTE OF LIMITATIONS

Section 10 of the Securities and Exchange Act of 1934 contains no statute of limitations. As a result there is some question as to the applicable statute of limitations for the federally created cause of action.

██ ██ The cases of International Union, United Automobile Workers v.

---

1. The opinion of the Hon. John E. Miller, Senior District Judge, is reported in 294 F.Supp. 1178.

2. Sam Sexton, Jr., has filed a counterclaim against the plaintiffs alleging a conspiracy to libel and slander him and to engage in malicious prosecution and abuse of process, seeking judgment of $1,-000,000.00 actual and $1,000,000.00 punitive damages. The plaintiffs' motion to dismiss Sexton's counterclaim has not yet been acted upon by the District Court and is still pending.

3. The evidence is clear that Markham was the agent for the South Dakota investors at the time the option agreement was

signed and at the time the purchase was concluded on January 10, 1966. This would make Markham the agent for the South Dakota investors when he personally took charge of AHB and PL&I on September 9, 1965. The District Court so found in its opinion in City National Bank of Fort Smith, Ark. v. Vanderboom, 290 F.Supp. 592, 609 (W.D.Ark. 1968). Whether Markham continued to act as agent for the South Dakota investors after the option purchase was consummated cannot be determined from this record. This is a matter that can only be determined by a trial upon remand of this case.

Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), Cope v. Anderson, Receiver, 331 U.S. 461, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947), and Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), as well as a legion of lower court cases, make it clear that when the federal legislative act is silent as to the statute of limitations applicable to it, the limitations period of the forum state is applied. But it is not entirely clear which of several Arkansas statutes of limitations is the appropriate one to apply. The basic standard for determining which of the various local periods of limitation to utilize is that it should be "one which best effectuates the federal policy at issue." Charney v. Thomas, 372 F.2d 97, 100 (6th Cir. 1967).

Appellants contend that the proper statute of limitations to follow is found in Ark.Stat.Ann. § 37–206 (Replacement 1962), a general statute of limitations applying to any action of account, assumpsit or on the case, founded on any contract or liability, and which, according to the District Court, has been made applicable to common law fraud and deceit by Arkansas judicial decision. *See* Air Leases v. Baker, 167 F.Supp. 145 (W.D. Ark., 1958). Under this statute an action must be brought within three years of the date it accrues. If this statute were applicable, appellants would not be barred by the statute of limitations. Appellants admit that the Arkansas five year general catch-all statute of limitations does not apply to the action set forth in the complaint.

■ The appellees contend, and the District Court determined, that the appropriate statute of limitations for the federally based 10b–5 action[4] is found in § 22 of the Arkansas Securities Act of 1959, Ark.Stat.Ann. § 67–1256(e) (Replacement 1966), which is also § 410(e) of the Uniform Securities Act.

There it is stated that no person suing under that statute may do so more than two years after the relevant contract of sale. We agree with the District Court that this is the proper statute of limitations to apply since it deals expressly with the sale of securities.

While appellants contend that no federal case has applied a short blue-sky statute of limitations, it appears that this ordinarily would be the most reasonable and logical type of statute to apply to essentially what might be termed an "implied federal blue-sky" type of statutory action. See A. Bromberg, Securities Law, Fraud, SEC Rule 10b–5. The reported federal courts of appeals cases on this issue favorable to appellants' position include Charney v. Thomas, 372 F.2d 97 (6th Cir. 1967), which refused to apply the Michigan blue-sky statute of limitations because the Michigan blue-sky law did not contain any provision similar to rule 10b–5, and instead applied the longer Michigan statute of limitations on general common law fraud; Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), cert. denied, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965), which applied a Massachusetts two year statute, with no discussion of other possible statute; Errion v. Connell, 236 F.2d 447 (9th Cir. 1956), which applied the Washington three year fraud statute from the date of the discovery of the fraud without discussing any other possible blue-sky type of statute; and Fratt v. Robinson, 203 F.2d 627, 37 A. L.R.2d 636 (9th Cir. 1953), which applied the Washington fraud statute of three years instead of a two year statute covering liability created by statute.

Since the standard for determining the applicable statute of limitations is to select the statute that best effectuates the federal policy involved, it is appropriate to look to the local statute which bears the closest resemblance to the fed-

---

4. We assume as held in Air Leases v. Baker, *supra*, that the Arkansas three year statute of limitations would be applicable to the common law segment of this tort action, but this issue was not reached in the District Court as that action was dismissed for lack of complete diversity.

eral statute involved. Rule 10b–5 states:

> "It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud.
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
>
> in connection with the purchase or sale of any security."

It is suggested by the appellants that there is no section of Ark.Stat.Ann. § 67–1235–1262 (Replacement 1966) (the Arkansas blue-sky provision) which is entirely comparable to Rule 10b–5. It is true that though Rule 10b–5 is codified as § 101 of the Uniform Securities Act and as § 67–1235 of the Arkansas blue-sky law, it was specifically stated in the Commissioner's notes to this section that it was to create no private remedy. The only section of the Act which provides a private remedy is § 410, Ark.Stat.Ann. § 67–1256 (Replacement 1966). This section is modeled after and parallels Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). Section 67–1256 states in relevant part:

> "Any person who—
>
> (2) offers or sells a security * * * by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circum-

stances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission,

> shall be liable to the person purchasing such security from him. * * * "

It is evident that Rule 10b–5 and § 67–1256 of the Arkansas blue-sky statute are not identical. The latter specifically creates the defense of lack of knowledge, or ability to know the untruth of representations made by the defendant, whereas Rule 10b–5 on its face creates no defenses. In the case of Trussell v. United Underwriters Ltd., 228 F.Supp. 757 (D.Col. 1964) the Court, following a controlling 10th Circuit opinion, Rice v. United States, 149 F.2d 601 (10th Cir. 1945), construed Rule 10b–5 to require scienter and to be basically analogous to common law fraud. Under such a construction it was perhaps correct to use the local statute of limitations which specifically applied to common law fraud, rather than the statute of limitations pertaining to the local blue-sky law in which the private remedy was comparable to § 12(2) of the Securities Act of 1933 which provides recovery for negligent as well as knowing and intentional misrepresentations. Similarly, in Charney v. Thomas, *supra*, the Court held that the local blue-sky private remedy (also taken from § 410 of the Uniform Securities Act and based upon § 12(2) of the Securities Act of 1933) was comparable to § 12(2) and not to Rule 10b–5 and thus applied the state statute of limitations applicable to fraud. However, the present rule in the 8th Circuit is that Rule 10b–5 applies to negligent as well as intentional misrepresentations. Myzel v. Fields, 386 F.2d 718, 734–735 (8th Cir. 1967), cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968). We therefore view the appellants' federal claims as a blue-sky type of implied stat-

utory action rather than as a basic fraud action.

This Court has said that "[p]roof of 'scienter,' i.e., knowledge of the falseness of the impression produced by the statements or omissions made, is not required under Section 10(b) of the Act." Myzel v. Fields, 386 F.2d 718, 734–735 (8th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043 (1968). This ruling is further supported in the landmark case of SEC v. Texas Gulf Sulphur Co., 401 F.2d 833, 855 (2d Cir. 1968), (en banc) cert. denied, Coates v. SEC, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756, a suit seeking injunctive relief, where the Court said:

> "Absent any clear indication of a legislative intention to require a showing of specific fraudulent intent, the securities laws should be interpreted as an expansion of the common law both to effectuate the broad remedial design of Congress, and to insure uniformity of enforcement. Moreover, a review of other sections of the Act from which Rule 10b–5 seems to have been drawn suggests that the implementation of a standard of conduct that encompasses negligence as well as active fraud comports with the administrative and the legislative purposes underlying the Rule." [Citations omitted]

It might be said that neither Myzel v. Fields, *supra*, nor *Texas Gulf Sulphur, supra*, involves private relief sought by a buyer, *Myzel* involving a seller, and *Texas Gulf Sulphur* being a suit by the SEC. In cases under Rule 10b–5 in which a buyer has sought relief it has been suggested by some courts that a mere negligent misrepresentation is not sufficient to ground relief, on the theory that to allow such recovery is to nullify the strict procedural requirements found in § 12(2) which is strictly a buyer's remedy. Fischman v. Raytheon Mfg. Co., 188 F.2d 783 (2d Cir. 1951). No procedural requirements are found in § 10(b). In Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961) this problem was presented and the Court there said that

to restrict buyer's relief under Rule 10b–5 to cases of intentional misrepresentations would be to discriminate in favor of sellers, who would not be so limited, and against buyers. Since no such discriminatory intention is evident on the face of § 10(b) or from its legislative history, and since § 10(b) was written in 1934, one year after § 12(2), the Court held that buyers suing under Rule 10b–5 could recover for negligent misrepresentations. We believe this is the correct approach, and calls for a shorter limitations period on the federal claim.

On the other hand, the District Court found that under Arkansas law one can recover for common law fraud and deceit only if scienter or intentional misrepresentation is proved. The Court cited a long list of cases including Sledge & Norfleet Co. v. Mann, 193 Ark. 884, 103 S.W.2d 630 (1937) and Croley v. Baker, 237 Ark. 136, 371 S.W.2d 830 (1963). There are a few cases in Arkansas suggesting that recovery can be had for negligent misrepresentations under a theory of "constructive fraud". Lane v. Rachel, 239 Ark. 400, 389 S.W. 2d 621 (1965); Stewart v. Clark, 115 S. W.2d 887 (1938). These cases, however, only constitute an exception to the general rule in Arkansas requiring scienter and the exception is applied to those situations where certain acts without scienter constitute constructive fraud as a matter of public policy. Thus, there is a clear distinction between actions proceeding under federal Rule 10b–5 and actions proceeding under the Arkansas law of fraud in that the former is much more favorable to plaintiffs, eliminating several of the defenses available to defendants in a common law fraud action.

In short, common law fraud in Arkansas apparently requires scienter (calling for the 3 year statute of limitations), whereas misrepresentations under Arkansas blue-sky law are actionable if either intentionally or negligently made. In the 8th Circuit Rule 10b–5 applies to intentional and negligent misrepresentations, and like the Arkansas

blue-sky law is specifically aimed at securities fraud. In light of the commonality of purpose and the lack of defenses available under both Rule 10b–5 and the Arkansas blue-sky law as compared with common law fraud in Arkansas, we agree with the District Court that the 2 year statute of limitations found in § 22 of the Arkansas Securities Act of 1959 is the appropriate one to apply.

The appellants alternatively· argue that even if the two year statute of limitations is applied it should not necessarily be deemed to run from the date of the fraudulent or actionable contract of sale as required under § 22 of the Arkansas Securities Act. The appellants admit that if § 22 is followed in its entirety including the provision regarding the time when the statute begins to run, then regardless of when the fraud took place within the period of September 1965 to January 1966, the statute would have run and their action would have been barred when filed in July, 1968.

Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946) held that where the cause of action is federal in origin but a forum state's statute of limitations is being used, and the action is equitable in nature, federal law applies in regard to determining the date on which a statute of limitations begins to run. Federal law since the case of Bailey v. Glover, 88 U.S. 342, 21 Wall. 342, 22 L.Ed. 636 (1875) has been that in cases involving elements of fraud neither a statute of limitations nor the equitable doctrine of laches can be said to begin to run until the fraud is or should have been discovered. The doctrine that federal law applies in determining the date on which a statute of limitations begins to run was extended in Moviecolor Limited v. Eastman Kodak Company, 288 F.2d 80, 90 A.L.R.2d 252 (2d Cir. 1961) (dictum), cert. denied 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961) to include cases at law as well as equity if the cause of action is federal in nature

and even though a state statute of limitations applies.

It is true that a 10b–5 claim is a legal action based upon an implied civil remedy in tort, Fischman v. Raytheon. Mfg. Co., 188 F.2d 783 (2d Cir. 1951), and even though the distinction between law and equity must be preserved in federal courts under Art. III, § 2, clause 1 of the United States Constitution,[5] there is no reason to differentiate as between the two kinds of actions in applying the federal policy as to the determining date on which a statute of limitations or laches begins to run. We feel that the remedial policy expressed by Congress in enacting the securities legislation would best be served by making any statute of limitations run only from the date of the discovery of the fraud or from the date the fraud upon reasonable inquiry should have been discovered.

This decisional rule was specifically applied in a Rule 10b–5 case in Janigan v. Taylor, 344 F.2d 781 (1st Cir. 1965), cert. denied 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965). There the court held that although a two ·year state statute of limitations was applicable to the federal 10b–5 action, nevertheless federal law applied to determine the date the statute began to run, and the Court held that under federal law statutes of limitations do not begin to run in cases involving elements of fraud, until· the fraud is, or should be, discovered. The case of Turner v. Lundquist, 377 F.2d 44 (9th Cir. 1967), cited by appellees, is distinguishable. There the Court did look to the California law in determining the date on which the statute began to run, but just as under federal law, and unlike the situation in Janigan v. Taylor, *supra*, California law required discovery of the fraud in cases involving elements of fraud before a statute of limitations began to run.

Regardless of whether the alleged misrepresentation took place as early as September 1965 or as late as January 1966, the record before us is not clear as

---

5. See 32 Am.Jur.2nd Federal Practice and Procedure § 20 (1967) and cases noted therein.

to when the alleged fraud, with due diligence on the part of the investors, should have been discovered.[6] The appellants contend that the complicated internal structure of the corporations along with the extremely high level of separate individual accounts (representing mostly mortgage loans) held by AHB, in comparison with its total capital position, rendered an accurate and early accounting impossible. The appellees counter that the company's entire financial situation was available to the investors during the option period, and if the company was in financial difficulties, this should have been discovered at that time. Furthermore, the appellees assert that the appellants' own evidence shows that the alleged fraud was known by them at earlier dates in this unfortunate business transaction. This again is a matter that can only be determined upon a plenary trial.

Summary judgment under the Federal Rules of Civil Procedure, Rule 56, is to be used only in cases where there is no genuine issue as to any material fact. Chambers v. United States, 357 F.2d 224 (8th Cir. 1966). Here we have a disputed unresolved issue of fact, namely, by what date was the alleged fraud discovered or should it have been discovered. It is not possible to determine whether the statute of limitations is a bar to this action until this issue is decided. Thus, we remand this question to the District Court for trial.

Appellants also contend that the statute of limitations was tolled by the filing of the suit in South Dakota in November, 1967. This point is not well taken as many of the appellants were not included as parties in the South Dakota case. Furthermore as we shall point out below, the only proper party plaintiff in the present suit is ITC and since it was not included in the South Dakota suit it cannot claim that that suit, involving a different array of parties plaintiff, tolled the statute of limitations for purposes of this case. It appears obvious that since ITC was not a party to the South Dakota action, it could not claim any benefits that might accrue relative to that suit. *See* 54 C.J. S. Limitations of Actions § 278 (1948).

## PENDENT JURISDICTION ISSUE

Appellants next assert that the District Court erred in dismissing appellants' common law fraud claim. Issue is not taken with the District Court's determination that due to the presence of ITC (an Arkansas corporation) in the lawsuit, complete diversity between the parties was lacking. However, appellants claim the common law action should have been heard under the doctrine of pendent jurisdiction. In United Mine Workers v. Gibbs, 383 U.S. 715, at page 722, 86 S.Ct. 1130, at pages 1137–1138, 16 L.Ed.2d 218 (1966) the Su-

---

6. The investors alleged in their complaint that certain representations as to the value of AHB and its related companies were made by Sexton and by Hall. Sexton admitted that he stated the value to be $340,000.00 to $350,000.00 and Hall is alleged to have represented the value at $1,000,000.00. These representations, of course, are subject to further proof and evaluation. The investors, after all, only paid to the sellers $207,500.00 for the sellers' stock, the rest being paid to Texas Capital on company obligations, and to Markham and Gatlin.

Investors, however, claim that they did not discover the alleged fraud until Fred Landau & Company had completed an audit of AHB and PL&I in November of 1967. That audit allegedly shows the net worth of AHB as of September 1965 to be a minus $537,253.18 and PL&I as of June 30, 1965 as $31,152.41. This, of course, presents several major unresolved issues upon which the merits of the case would turn. See companion case of City National Bank of Fort Smith v. Vanderboom, 422 F.2d 221, decided the 20th day of February, 1970.

In other words, whether any actionable representations of actual value were made by the sellers and whether the Fred Landau audit of November 1965 was accurate can only be determined upon a trial of the issues in this case and not upon summary judgment.

preme Court discussed the doctrine of pendent jurisdiction:

> "The Court held in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, that state law claims are appropriate for federal court determination if they form a separate but parallel ground for relief also sought in a substantial claim based on federal law. The Court distinguished permissible from non-permissible exercises of federal judicial power over state law claims by contrasting 'a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground*; in the latter it may not do so upon the nonfederal *cause of action*.'"

■ As in United Mine Workers v. Gibbs, *supra,* the question here is, into which of the two categories suggested does this common law claim fall. The District Court stated its opinion was "that two separate causes of action are alleged, only one of which is federal in character. The other is based upon the common law." 294 F.Supp. at 1183. Thus the District Court dismissed the common law claim. But the Supreme Court in United Mine Workers v. Gibbs, *supra,* took a much less restrictive view of what constitutes a cause of action, and concomitantly took a more expansive view of federal court power under the doctrine of pendent jurisdiction, stating at 725, 86 S.Ct. at 1138:

> "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority * * *,' U.S.Const. Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." [Citations omitted]

We feel, therefore, that the present law suit unquestionably comprises one cause of action supported by several alternate theories of recovery. Thus, the District Court was not without power to adjudicate the common law claim.

■ The appellees correctly point out, however, that the use of this power is discretionary. United Mine Workers v. Gibbs, *supra* at 726, 86 S.Ct. 1130. Appellees cite several cases in which courts stated the state law claim should be dismissed if the federal claim was itself dismissed before trial. United Mine Workers v. Gibbs, *supra,* at 726, 86 S.Ct. 1130 and Wham-O-Mfg. Co. v. Paradise Manufacturing Co., 327 F.2d 748 (9th Cir. 1964). However, that is no longer the posture of this case since the District Court must determine anew whether the two year statute of limitations stands as a bar to the federal cause of action. Thus, in remanding this case we reinstate the common law fraud action, believing that if the federal cause of action reaches the merits, judicial economy and convenience would favor the use of the power of pendent jurisdiction and the simultaneous determination of the common law and the federal claims. We respect, however, the trial court's discretion in considering the pendent jurisdiction issue.

STANDING TO SUE QUESTION

Finally, we must consider the question of whether all of the parties plaintiff have standing to sue in this action on the 10b–5 claim. Appellees point out that only ITC was a party to the agreement of September 9, 1965, and thus only ITC was a purchaser under Rule 10b–5. Surowitz v. Hilton Hotels Corporation, 342 F.2d 596 (7th Cir. 1965), rev'd on other grounds, 383 U.S. 363, 86 S.Ct. 845, 15 L.Ed.2d 807 (1966), held at 604:

> "Where it has appeared that a corporation was the party injured by a violation of Section 10(b) of the 1934 Act, the courts have held that a shareholder of that corporation has standing to sue only on a derivative basis."

The investors have never indicated they were bringing this case as a derivative suit. The cases cited by appellants are inapposite since in all of them the corporation was clearly a sham, unlike ITC which was originally set up as an investment corporation and only later became a holding corporation for the investors. Here we have no basis for disregarding the corporate integrity. *See* companion case of City National Bank of Fort Smith v. Vanderboom, 422 F.2d 221, decided the 20th day of February, 1970.

As noted in Greater Iowa Corporation v. McLendon, 378 F.2d 783, 790 (8th Cir. 1967), "A breach of statutory duty does not give rise to a private cause of action to every person injured by the statutory breach. The law clearly demands that the statutory breach must cause injury to one of the class that the statute is designed to protect."

The Securities Act was designed primarily to protect investors by "promoting full disclosure of information thought necessary to informed investment decisions." SEC v. Ralston Purina Co., 346 U.S. 119, 124, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953). If any recovery is had in this case because of fraudulent concealment of material facts or misrepresentation in the sale of the securities, the right of action runs to the purchaser, ITC, of which the South Dakota appellants constitute only one class of stockholders, owning only non-voting stock. The voting stock of ITC was owned by Markham who is not a party in this suit and who was in active control of the corporations purchased by ITC from September 9, 1965 until their financial demise. Thus, we feel that ITC is the only proper party plaintiff on the 10b–5 claim.

We, therefore, remand this case to the District Court with instructions to determine at trial when the alleged fraud was discovered or should have been discovered in order to decide whether the two year Arkansas blue-sky statute of limitations is a bar to the 10b–5 claim, and we reinstitute the Arkansas common law fraud claim, at least until such time as the District Court determines whether the statute of limitations stands as a bar to the 10b–5 claim. Nor do we mean to imply that the common law fraud claim should be dismissed even if the statute of limitations has run on the 10b–5 claim as the District Court would still have the discretion to consider the common law fraud claim in view of the fact that there is undeniable federal jurisdiction on the 10b–5 claim. We recognize the admonition of United Mine Workers v. Gibbs, *supra*, 383 U.S. at 726, 86 S.Ct. 1130 that if federal claims are dismissed before trial, the state claims should also be dismissed. But, since a full hearing is required in this case to determine the issue of whether the statute of limitations has run on the 10b–5 claim, it would probably serve the best interest of justice and also the time and expense of litigants to determine all claims, federal and non-federal in one hearing.

Reversed and remanded for proceedings consistent with this opinion.