486 F.Supp. 56 (1980)
G. A. BUDER, III, et al., Plaintiffs,
v.
MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., et al., Defendants.
No. 77-643C(B).
United States District Court, E. D. Missouri, E. D.
February 1, 1980.
*57 Charles E. Valier, St. Louis, Mo., for plaintiffs.
John J. Cole, Thomas E. Wack, St. Louis, Mo., for defendants.

MEMORANDUM AND ORDER
REGAN, District Judge.
Before us is defendants' motion for summary judgment on the ground plaintiffs' claims are barred by limitations.
This suit is based in large part upon alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. Section 78j) and Rule 10b-5 promulgated thereunder. Other grounds of action relied on are alleged violations of Sections 12(2) and 17(a) of the Securities Act of 1933, and Section 15(c)(1) and (2) of the Securities Exchange Act of 1934.
Insofar as concerns claims based on Section 12(2) of the Securities Act, the Act provides (Section 13) that actions to enforce Section 12(2) liabilities must be brought not later than three years after the sale or one year after discovery of the fraud, whichever is shorter. The last sale of a security occurred more than three years prior to the institution of this action, so that Section 12(2) claims are clearly barred by limitations. So, too, claims based on Section 15(c)(1) and (2) of the 1934 Act are barred by virtue of the unambiguous provisions of Section 29(b) of that Act. Such claims must be brought within one year after discovery of the alleged violation but not later than three years after the violation. The last of the alleged violations occurred in December, 1973, more than three years before suit was brought in June, 1977.
With respect to the Section 17(a) claims, we question whether a private right of action may be implied therefrom. The Circuits are in disagreement. See Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 155 (8 Cir. 1977); Daniel v. International Brotherhood of Teamsters, etc., 561 F.2d 1223 (7 Cir. 1977), and Kirshner v. United States, 603 F.2d 234, 241 (2 Cir. 1978). Certiorari was denied in Shull and granted in Daniel. However, inasmuch as Daniel was decided on another point by the Supreme Court, it "express(ed) no views on this issue." 439 U.S. 551, page 557 footnote 9, 99 S.Ct. 790, page 795 footnote 9, 58 L.Ed.2d 808. In Kirshner, the Second Circuit reasoned that "there was little practical point in denying the existence of an action under § 17 once it is established that an aggrieved buyer has a private action under § 10(b) of the 1934 Act." We do not definitively rule this issue, for the reason that the limitation period would be that applicable to Section 10(b) claims. Our ruling, infra, on those claims is dispositive of the Section 17(a) claim.
The primary thrust of this section are the claims based on Section 10(b) of the 1934 Act (15 U.S.C. § 78j) and Rule 10b-5 thereunder. Where, as in Section 10(b), no federal limitations period is provided to determine the timeliness of an action on a federally created claim, the courts look to the appropriate state statute which best serves to effectuate the federal policy at issue. In conformity with this principle, the Court of Appeals for the Eighth Circuit definitively ruled, in Morris v. Stifel, Nicolaus & Co., 600 F.2d 139 (8 Cir. 1979), that the two year period of limitation in Section 409.411(e) of the Missouri Blue Sky Law, rather than the five year period for common law fraud in Missouri, governs Section 10(b) claims. The trial of the instant case was postponed several times awaiting the decision in Morris.
*58 Section 409.411(e), RSMo. provides in unambiguous language and without exception that "[n]o person may sue under this section more than two years after the contract of sale." Unlike the Missouri statute providing a limitation of five years for common law fraud claims, there is no tolling provision applicable to claims under the Missouri Blue Sky Law. Nevertheless, the Court of Appeals in Morris, citing its earlier decision in Vanderboom v. Sexton, 422 F.2d 1233, 1240 (8th Cir. 1970, clearly indicated that the limitations period runs "only from the date of discovery of the fraud or from the date the fraud should have been discovered." We are, of course, bound to follow these rulings.
The question for resolution, then, is whether there is a genuine issue of fact respecting the latest date at which the alleged fraud was or "should have been discovered."
Plaintiff, G. A. Buder, III, on his own behalf and on behalf of his then minor children, maintained several securities accounts with defendant Merrill Lynch, Pierce, Fenner & Smith (Merrill Lynch), allegedly relying on advice and counsel from defendant Ray Dusek, Jr. (Dusek), an account executive for Merrill Lynch. The complaint alleges that Dusek, by fraudulent and misleading representations and material omissions, induced Buder to sell (or pledge) high quality stock in his personal and custodial accounts and invest the proceeds in real estate investment trusts (REITs) and thereafter to continue to invest in REITs.
Buder, a college graduate, business man, and oil company executive, was an experienced, sophisticated investor. His present wife was, prior to their marriage in 1965, an account executive with another brokerage firm in Wichita Falls, Texas. Buder was one of her clients. As such, he bought and sold securities without seeking or obtaining her advice.[1] From time to time, over the years, Buder has subscribed to various investment advisory services, such as Barrons and the Wall Street Journal. He had in the past made various investment judgments on his own, including some of a speculative nature.
Essentially, the complaint charges that commencing in late 1971 (while Buder resided in Wichita Falls, Texas),[2] Dusek fraudulently and falsely represented that the REITs were sound securities with high yields and high growth possibilities and with little attendant risk. In his answers to interrogatories Buder stated that the representations were made prior to each individual purchase of REITs, the last such purchase being in December 1973, so that insofar as concerns federal securities fraud in connection with a purchase of securities, the instant suit was filed some three and a half years thereafter (June 13, 1977).
We have carefully read the voluminous (3 volume) deposition of Buder as well as his answers to interrogatories and have taken note of various documents which had been furnished to Buder during the critical period antedating the two years prior to June 13, 1977, and have no doubt whatever that sufficient information was made known to Buder during and prior to this critical period to have put him on notice of the actual, speculative nature of the REITs and their poor quality as investments, and so, of the falsity of the alleged representations.
In our judgment, testimony by Buder that he does "not recall" reading some of the reports sent to him, or that Dusek, in effect, told him not to pay attention to them (even though no dividends were being paid and the book and market values were substantially down) does not operate to create a jury issue as to when the alleged fraud upon reasonable inquiry should have *59 been discovered.[3] Buder may not deliberately close his eyes to the information available to him which would demonstrate to any reasonable person (and to Buder in particular as a sophisticated investor) that the alleged representations of Dusek as to the soundness and lack of risk of REITs for investment purposes could not have been true. It follows that limitations had run on these federal securities claims as of June 13, 1977, when the suit was filed.
Buder argues that as to his minor children, the Missouri tolling statute (Section 516.170 RSMo.) saves them against the running of the statute of limitations. His theory is even though Section 409.411(e) contains no comparable saving clause, Section 516.170 is a general statute which is applicable. He is in error.
Section 516.170, by its very terms, applies only to personal actions included within the general statute on limitations.[4] To make this crystal clear, Section 516.300 expressly provides: "The provisions of sections 516.010 to 516.370 (which, of course, includes Section 516.170) shall not extend to any action which is or shall be otherwise limited by any statute, but such action shall be brought within the time limited by such statutes." This section has been consistently construed to preclude the application of Section 516.170 to any action to which a special statute of limitation applies. Thus, in State ex rel. Bier v. Bigger, 352 Mo. 502, 178 S.W.2d 347, 350 (1944), the Missouri Supreme Court en banc ruled:
"This court has uniformly held that where a statute of limitations is a special one, not included in the general chapter on limitations, the running thereof cannot be tolled because of fraud, concealment or any other reason not provided in the statute itself."
And in Frazee v. Partney, 314 S.W.2d 915, 919 (Mo.1958), the Missouri Supreme Court expressly held: "A special statute of limitations must carry its own exceptions and we may not engraft others upon it." To the same effect are Black v. The City National Bank and Trust Company, 321 S.W.2d 477, 480 (Mo.1959) and Kohout v. Adler, 327 S.W.2d 492, 494 (Mo.App.1959).
As we have noted, Section 409.411(a), the special Missouri limitations statute, contains no exceptions. We add that exceptions to statutes of limitation "are matters of public policy for determination by the General Assembly," not by the courts. Hunter v. Hunter, 237 S.W.2d 100, 104 (Mo.1951). And as stated in the Bigger case, supra, if an "inflexible limitation" should seem harsh in a particular case, "the remedy is legislative, not judicial."
We hold that inasmuch as plaintiffs' complaint was not filed within two years after Buder individually and as custodian should have discovered the alleged fraud, the federal securities claims alleged in the complaint are barred. It follows from the foregoing that defendants' motion for summary judgment should be and it is hereby sustained. Judgment will be entered in accordance herewith.
NOTES
[1] For purposes of the present motion, we accept as true Mrs. Buder's testimony that although she realized in late 1973 that REITs were in trouble and in a deficit situation, she did not discuss the matter with Buder.
[2] The Buders moved back to Missouri in late 1973.
[3] When the courts speak of "reasonable inquiry" it is obvious they are not referring to inquiry of the alleged fraud feasor.
[4] Another provision, comparable to Section 516.170, applies to real actions included within the general limitations statute. Section 516.030 RSMo.