**Charles ROBERTSON, et al., Plaintiffs,**

v.

**DELOITTE, HASKINS & SELLS, Defendant.**

Civ. No. LR–C–88–207.

United States District Court, E.D. Arkansas, W.D.

Feb. 5, 1990.

Charles D. Davidson, Davidson Law Firm, Ltd., Little Rock, Ark., for plaintiffs.

James P. Tracy, Deloitte, Haskins & Sells, New York City, and Overton S. Anderson, Anderson & Kilpatrick, Little Rock, Ark., for defendant.

## MEMORANDUM AND ORDER

EISELE, Chief Judge.

Pending before the Court is the defendant's motion to dismiss. The plaintiffs have responded. For the reasons given below the motion will be denied.

## I. THE STANDARD ON MOTIONS TO DISMISS

Under a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted the complaint is to be construed in the light most favorable to plaintiff and its allegations are taken as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

The critical issue is the sufficiency of the complaint which is governed by the pleading standard stated in Rule 8(a). A pleading setting forth a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Included then, in the determination of whether a claim is stated is the determination of whether relief can be granted on this claim. *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

The sufficiency requirement most frequently utilized is derived from the Supreme Court's pronouncement that

in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Mindful of these guiding principles, the Court addresses defendant's motion.

## II. THE AMENDED COMPLAINT

On November 15, 1988, the Court dismissed plaintiffs' Rule 10b–5 allegations for failure to allege fraud with the particularity required by Fed.R.Civ.P. 9(b). On December 16, 1988, the Court dismissed the remaining state-law Counts for lack of subject matter jurisdiction. However, since the plaintiffs filed their motion to amend before they had knowledge of the Court's dismissal, the Court held that it would consider the motion to amend. *See* Court's Order of January 19, 1989. On April 4, 1989 the Court granted the plaintiffs' motion to amend. In its Order the Court stated:

The Court notes that the defendant's response to the motion to amend and the plaintiffs' reply thereto are cast in terms of a motion to dismiss and a response thereto. The Court will consider said pleadings as the defendant's second motion to dismiss and plaintiffs' response thereto. If the parties desire to file different or supplemental pleadings they may do so provided same are received by the Court on or before April 17, 1989.

For its supplemental response, the defendant states that the proposed second amended complaint continues to suffer the defects pointed out in defendant's prior motion to dismiss and in the Court's Order of November 15, 1988. Specifically, the defendant asserts four grounds for dismissal of the amended complaint: (1) the federal securities law counts of the proposed complaint fail to state a claim under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) and Rule 10b–5 promulgated by the Securities and Exchange Commission, 17 C.F.R. § 240.10b–5 (1987); (2) the federal securities law counts do not satisfy the particularity requirements of Fed.R.Civ.P. 9(b); (3) the federal causes of action are barred by the applicable statute of limitations; (4) the state-law claims should be dismissed under *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The Court will address the first two claims together and the subsequent ones individually.

### A. *Particularity Under Rule 9(b) and the Sufficiency of the 10b–5 Claim*

Defendant renews its argument that plaintiffs have not alleged a 10b–5 violation with factual precision. In many securities cases the potential abuses of process resulting from complaints filed for their "nui-

sance settlement value" has led many courts to require that the particularity of Rule 9(b) be met. *See e.g. Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 114 (2d Cir.1982). This Rule sets out the requirement that pleadings alleging fraud or mistake be made in unambiguous terms.

Upon review of the amended complaint, the defendant's second motion to dismiss, the plaintiffs' response thereto and the supplemental filing, the Court concludes that the proposed amended complaint adequately states a cause of action under Rule 10b–5.

The amended complaint, as did the original and first amended complaint seeks to impose liability on the defendants on the basis of the following statements attributable to the defendants contained in an offering memorandum and an auditor's opinion:

> The managing General Partner has a net worth of $5,000,000.00. Financial statements of the Managing General Partner are available for review by prospective investors at the offices of the Managing General Partner.
>
> The financial success of the partnership could depend upon the ability of Patterson Properties and Jon R. Brittenum to perform under the guaranty agreement they have entered into with the partnership.

Offering Memorandum.

> In conjunction with the construction and purchase of the project the general partner has provided letters of credit totalling $300,000.00 as security.

The pivotal change in the amended complaint is the addition of a section entitled "Knowledge of DHS," in which the plaintiffs attempt to plead in detail the defendant's knowledge of the limited partnership's allegedly precarious financial condition. The plaintiffs state that Phil Cox, a DHS partner, was intimately aware of and actively involved in the financial affairs of Jon Brittenum, the managing partner. Specifically, the plaintiffs allege that Mr. Cox:

> was actively participating and in direct negotiation with the creditors of Jon Brittenum regarding restructuring of Mr. Brittenum's debts;
>
> [acting] in his capacity as a partner with DHS, was assisting Jon Brittenum in his search for additional capital to keep his business going and in Brittenum's efforts to avoid filing for Bankruptcy protection from his creditors;
>
> [acting] in his capacity as a partner with DHS, assisted Jon Brittenum in his efforts to obtain capital by providing financial information to potential lenders and investors on behalf of Jon Brittenum;
>
> knew Jon Brittenum had been rejected by numerous prospective lenders and investors for the purpose of acquiring additional capital to keep Brittenum's business afloat;
>
> knew without question that Jon Brittenum, at the time the offering memorandum referred to in Paragraph 10 was prepared, that Jon Brittenum did not have a net worth in excess of $5,000,-000.00 as stated in the offering memorandum and, in fact, had a negative net worth, [and] was desperate for funds;
>
> knew that Jon Brittenum's and Brittenum & Associates' motivation to sell to the investors was to receive high commissions and fees to pay creditors and avoid bankruptcy;
>
> knew prior to the issuance of the offering memorandum referred to in Paragraph 10, without a doubt, that Jon Brittenum and his company had a negative cash flow and would not be able to subsidize the rental income as agreed to in the offering memorandum;
>
> knew at the time the offering statement referred to in Paragraph 10 was issued, Jon Brittenum had previously borrowed approximately $1,000,000.00 in [sic] which he was unable to repay;
>
> assisted in obtaining working capital loans for the express purpose to keep Brittenum & Associates from being closed down by the NASD;
>
> knew, without question, that the statement "The managing general partner [Brittenum] has a net worth in excess of $5,000,000.00" was false.

Proposed Second Amended Complaint, Paragraphs 17–24.

The defendant contends that the "limited statements" in the offering attributed to it do not provide a basis for liability under Rule 10b–5. First, the defendant argues, the proposed complaint does not even allege that the statement indicating that the general partner "has provided letters of credit totaling $300,000.00" was false, or that the letters referred to were not provided as stated. Regarding the statement in the offering memorandum that Brittenum had a net worth in excess of $5,000,000.00, the defendant asserts that the statement provides no basis for liability because of an express disclaimer regarding the speculative nature of the report. The Court notes that the defendant does not address the allegations concerning the "knowledge of DHS" and which are directed at the defendant's partner, Mr. Phil Cox.

This Circuit has held that for aider and abettor liability to apply—here, an accountant's liability—a three prong test must be met. First, existence of a violation of securities law(s) by a principal party. Second, "knowledge" of the violation on the part of the secondary, aiding and abetting party. And finally "substantial assistance" by the secondary party in the achievement of the goal. *Metge v. Baehler*, 762 F.2d 621 (8th Cir.1985), *cert. denied sub nom., Metge v. Banker's Trust Co.*, 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986).

As to the last prong, inaction can, under certain circumstances of heightened scienter, bring a secondary party within the compass of accessorial liability for their substantial role in causing injury to the plaintiff. This inactivity may lead to liability where the secondary party has an affirmative duty to disclose information to the plaintiff or where the party "consciously intended to assist in the perpetration of the wrongful act." *Metge supra* at 625 (emphasis original); *Monsen v. Consolidated Dressed Beef Co. Inc.*, 579 F.2d 793 (3d Cir.1978), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1979); *Woodward v. Metro Bank of Dallas*, 522 F.2d 84 (5th Cir.1975). Heightened intent and

knowledge may be demonstrated with circumstantial evidence. *Metge* at 625 (citing *Woodward, supra* at 96).

■ The Court agrees with the defendant that there is no basis for a claim in the limited statements contained in the offering memorandum and auditor's opinion alone. *See* Court's Order of November 15, 1988. The Court is however, of the opinion that the statements, when viewed in the light of the allegations directed against DHS partner Mr. Phil Cox, do adequately state a cause of action under Rule 10b–5. *See* Court's Order of November 15, 1988 granting defendant's motion to dismiss.

## III. THE STATUTE OF LIMITATIONS FOR RULE 10b–5 ACTIONS

■ Defendant urges the Court first to adopt a new statute of limitations ("SOL") for private actions under Section 10(b) of the 1934 Securities Exchange Act to be derived from that act and then to apply the statute retroactively to find plaintiff's claims to be time barred. Defendants direct the Court to a recent decision of the Third Circuit applying the statute of limitations provisions of the 1934 Act to Rule 10b–5 claims. *See In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.) (en banc), *cert. denied sub nom. Vitiello v. I. Kahlowsky & Co.*, —— U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). Under the 1934 Act, most cases must be brought within one year of discovery of the violation, but under no circumstances beyond three years from the date of the occurrence.

In response, plaintiffs state that the appropriate SOL for actions brought under Section 10(b) is the analogous state law of limitations. *Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985) ("the settled practice has been to adopt a local time limitation as federal law when not inconsistent with federal law or policy to do so.") Plaintiffs maintain that under Arkansas law a five year SOL applies to their action and that even if the Court chooses to adopt a federal securities statute they have properly filed their action within it. Ark.Stat.Ann.

§ 67–1256 recodified at Ark.Code Ann. 23–42–106(f) (1987). *See Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970).

### A. *The Current Situation*

The problem of which statute to employ arises because Congress did not create the private action under Section 10(b). It is instead, an entirely judge-made remedy. *See Kardon v. Nat'l Gypsum Co.,* 69 F.Supp. 512, 513–14 (E.D.Pa.1946) (private cause of action may be implied from Section 10(b)). The absence then of a statutory time bar is not surprising. What is somewhat frustrating to lower courts is the uncertainty engendered by the lack of a Supreme Court endorsed uniform national standard. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Judge Easterbrook has summarized the situation most colorfully as:

> one tottering parapet of a ramshackle edifice. Deciding what features of state periods of limitations to adopt for which federal statute wastes untold hours. *Tellis v. United States Fidelity and Guarantee Co.,* 805 F.2d 741, 747 (7th Cir.1986) (Ripple, J., dissenting). Never has the process been more enervating than in securities law. There are more potentially analogous state statutes, with variations for different kinds of securities offenses and different circumstances that might toll the period of limitations. Both the bar and scholars have found the subject vexing and have pleaded, with a unanimity rare in law, for help. *See e.g.* Loss, *Fundamentals of Securities Regulation,* 1164–75 (1983); Hazen, *The Law of Securities Regulation,* § 13.8 & n. 2 (1985) (collecting authority); *Report of the Task Force on Statutes of Limitation for Implied Actions,* 41 Bus.Law. 645 (1986). As the ABA's Committee on Federal Regulation of Securities observed, *id.* at 646–47, 656–57, the courts of appeal disagree on every possible question about limitation periods in securities cases. Only Congress or the Supreme Court can bring uniformity to this field[.]

*Norris v. Wirtz,* 818 F.2d 1329, 1332 (7th Cir.), *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987).

### B. *The Supreme Court's Recent Pronouncements*

In the past few terms the Supreme Court thinking on the appropriateness of borrowing statutes of limitation from the federal inventory rather than from analogous state statutes has undergone a sea change. In *Del Costello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) the Court wrote:

> [W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

*Id.* at 172, 103 S.Ct. at 2294. (holding that the six month SOL built into section 10(b) of the NLRA, 29 U.S.C. § 160(b) should apply to hybrid claims by employees under section 301 of that act); *See also Occidental Chemical Corp. v. International Chemical Workers Union,* 853 F.2d 1310 (6th Cir.1988) (concluding that three month period in United States Arbitration Act, 9 U.S.C. § 12, was most appropriate SOL in suit to vacate arbitration agreement); *Communications Workers of America v. Western Electric Co.,* 860 F.2d 1137 (1st Cir.1988) (adopting six month SOL per *Del Costello* for non-hybrid action under NLRA).

But it was the Court's decision in *Agency Holding Corp. v. Malley–Duff & Assoc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) that triggered the rigorous treatment of the instant issue provided by the Third Circuit in *In re Data Access supra. Agency Holding* concerned not securities violations but rather claims of civil RICO and the appropriate SOL to be employed thereto. The Court formulated a two part test for determination of a fitting limitation statute. The initial finding is whether "all claims arising out of the federal statute" should be cabined by a single SOL or

whether differing time limits should apply "depending upon the varying factual circumstances and legal theories in each individual case." *Id.* 483 U.S. at 147, 107 S.Ct. at 2762 (quoting *Wilson v. Garcia, supra,* 471 U.S. at 268, 105 S.Ct. at 1942). The second inquiry is "whether a federal or state statute of limitations should be used." *Id.* There, the Court found that the SOL contained in the Clayton Act offered a "closer analogy" to civil RICO:

> [T]he similarities in purpose and structure between RICO and the Clayton Act, the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton Act strongly counsels in favor of application of the 4–year statute of limitations used for Clayton Act claims. 15 U.S.C. § 15b. This is especially true given the lack of any satisfactory state law analogue to RICO.

*Id.* 107 S.Ct. at 2765. It seems to the Court that the language of *Del Costello's* two prong inquiry into the appropriateness of borrowing from the federal inventory lends helpful standards to the inquiry into "whether a federal or state statute of limitations should be used."

### C. *Circuit Court Adoption of Uniform Federal Statutes After Data Access*

The Third Circuit's decision in *Data Access* broke new ground. It managed to cut through the Gordian knot of Section 10(b) time limits with scholarly precision. Many circuits however, have not had an opportunity to pass on this precise issue. To date, the Fourth, Fifth and Ninth Circuits and their district courts have yet to consider it. Significantly, although not in the same context, the First and Second Circuits have relied on *Data Access* to buttress their own analyses of *Del Costello* and *Agency Holding* to adopt uniform federal rules for claims arising out of federal statutes. *See Communications Workers of America supra,* at 1139 (applying *Del Costello* and borrowing the six-month federal statute for certain contract claims under the NLRA); *Singer v. Olympia Brewing Co.,* 878 F.2d 596 (2nd Cir.1989), *cert. denied* — U.S. ——, 110 S.Ct. 729, 107 L.Ed.2d 748 (1990)

(uniform federal rule for set-offs in 10b–5 cases adopted).

In the Sixth Circuit the analogous state law approach is still used but at least one district court sensed that change is in the wind. *Nichols v. Merrill Lynch, et al.,* 706 F.Supp. 1309 (M.D.Tenn.1989) (*Data Access* reasoning "sound" but parties did not brief question and retrospective application would impose hardship on litigants). And the only district courts in the Seventh Circuit to address *Data Access* held that its analysis was "correct in light of the decision in *Agency Holding,*" or "compelling," but in the former case, declined to adopt the one year/three year limitation because it did not see fit to apply it retroactively, as was required by the facts, *Basil v. Leidesdorf,* 713 F.Supp. 1194 (N.D.Ill.1989). In the latter case, the court adopted the reasoning but refused to apply it retroactively. *Kayne v. PaineWebber, Inc.,* 703 F.Supp. 1334 (N.D.Ill.1989).

The approach in this, the Eighth Circuit, is to not look to the federal inventory but rather to employ the most analogous state statute, and was last recited in a pre-*Agency Holding* case. *See Deviries v. Prudential–Bache Securities, Inc.,* 805 F.2d 326, 328 (8th Cir.1986). Two district courts have declined to anticipate the Eighth Circuit and have applied state law. *See Dingler v. T.J. Raney & Sons, Inc.,* 708 F.Supp. 1044, 1055 (W.D.Ark.1989); ("Despite the compelling reasoning set forth by the Third Circuit in *Data Access,* this court is not free to ignore established precedent in this circuit.") *TCF Banking and Savings F.A. v. Arthur Young & Co.,* 697 F.Supp. 362 (D.Minn.1988). Finally, one district court has rejected the reform without considering the reasoning of *Data Access, In re Professional Financial Management,* 703 F.Supp. 1388 (D.Minn. 1989).

Of the remaining circuits, a district court in the Tenth Circuit has adopted the Third Circuit's rule after an independent application of the *Data Access* approach, and the Eleventh Circuit has refused to do so without discussion. *See Bath v. Bushkin, Gaims, et al.,* 695 F.Supp. 1156 (D.Wyo.

1988); *Durham v. Business Management Assoc.*, 847 F.2d 1505 (11th Cir.1988).

### D. *The Court's Analysis*

Addressing the first part of *Agency Holding*'s test, the Court reviews the Eighth Circuit's decision in *Vanderboom supra.* There, the analogous Arkansas limitations were the common law fraud and blue sky securities statutes. The circuit panel found that the state securities law "best affectuate[d] the federal policy at issue" in Section 10(b) cases *Id* at 1237; that SOL provided a two year window. Subsequent amendment of the statute by the state legislature now provides for a five year limit. *See* Ark.Stat.Ann. § 67–1256(e) (Repl.1980), recodified at Ark. Code Ann. § 232–42–106(f) (1987).

Since 1970 when *Vanderboom* was decided, the wastefulness of the fact specific and claim specific search for analogous state statutes has, as noted, become a thorn in the side of the courts. This Court is therefore convinced that "the federal interests in uniformity, certainty, and the minimization of unnecessary litigation" requires a single uniform statute of limitations for claims arising under Section 10(b) and Rule 10b–5. *Wilson supra*, 471 U.S. at 275, 105 S.Ct. at 1946.

Turning now to the second part of the *Agency Holding* analysis, the Court must determine the appropriate source of the uniform rule, state or federal law. Applying the *Del Costello* prongs in reverse order, the Court feels satisfied that the "federal policies at stake and the practicalities of litigation" relating to the borrowing of statutes are identical to the policies and economies that compel a uniform national standard and that prong is satisfied. As to the question of whether "a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes," after reviewing the Eighth Circuit's decision in *Vanderboom* and the subsequent five year amendment under Arkansas law, the Court is firmly convinced that the one year/three year SOL applicable to other suits under the 1934 act is the "closer analogy".

The Court does not lightly adopt a standard which differs from pre-*Data Access* caselaw in this Circuit. While this Circuit has yet to speak to this issue it has dutifully followed Supreme Court adoption of the federal six month SOL provided in section 10(b) of the NLRA for hybrid claims under 29 U.S.C. 301 in *Del Costello*. It seems to this Court merely a matter of time before the instant issue comes before either the Eighth Circuit and the Supreme Court. And whichever body considers the problem first is sure to find the need for, and logic of, the borrowing, compelling. For reasons given below the Court will not address the issue of retroactive application of the statute.

### E. *Application to the Facts*

■ Defendant alleges that under the one year/three year statute of limitations plaintiff's Section 10(b) claims are barred because Jon Brittenum filed a bankruptcy petition on April 10, 1986. This, says defendant, should have put plaintiffs on notice that "Brittenum could not fulfill any financial guaranty he may have made." Defendant's Brief in Support of First Motion to Dismiss at 14. Defendant then concludes that since the suit was filed more than a year after this "discovery," on April 7, 1988, the SOL bars the claim.

The Court finds this argument specious. As plaintiffs point out Brittenum's bankruptcy petition "is not the operative fact which would have supplied Plaintiffs notice (sic) of the securities fraud." Plaintiffs' Brief in Support of Response to First Motion to Dismiss at 12. Nor does the petition instruct plaintiffs as to the knowledge defendants might have had of the alleged securities fraud. In short, it was immaterial as to the discovery of the violation and the one year provision does not operate in this case.

The Court also finds that the filing of this suit falls just inside the three year limit. The date of the prospectus is April 10, 1985 and the Court holds that this would be the date of any established violation for purposes of the SOL. Since the suit was filed on April 7, 1988, three days

shy of three years, the Court finds that the claims are not time barred. This is therefore, not the right case in which to consider the application of the statute retroactively.

## IV. PENDANT STATE LAW CLAIMS

Because the Court will not dismiss the federal question claims the issue of dismissal pursuant to the doctrine espoused in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) does not arise. The pendant state claims will not be dismissed.

IT IS THEREFORE ORDERED that Defendant's Second Motion to Dismiss be, and it is hereby, DENIED.