**Lloyd PINNEY, and James Crawley, Plaintiffs,**

v.

**EDWARD D. JONES & CO., et al., Defendants.**

**Civ. No. 89–5004.**

United States District Court,
W.D. Arkansas,
Fayetteville Division.

March 16, 1990.

Kenneth R. Shemin, Jerry C. Jones and B. Michael Bennett, Rose Law Firm, Little Rock, Ark., Sidney P. Davis, Jr. and William Jackson Butt, III, Davis, Cox & Wright, Fayetteville, Ark., Thomas A. Mars, Stanley, Harrington & Mars, Springdale, Ark., and Scott L. Starr, Walker, Starr, Austen & Tribbett, Logansport, Ind., for plaintiffs.

Kimberly Jade Norwood, Michael F. Coles, John Michael Clear and Leonardo J. Asaro, Bryan, Cave, McPheeters & McRobert, St. Louis, Mo., Thomas B. Burke and John R. Eldridge, III, Burke & Eldridge, Fayetteville, Ark., and Steve Shults, Shults, Ray & Kurrus, Little Rock, Ark., for defendants.

MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This case is presently before the court on defendants' motion to sever certain class members from the class pursuant to Rule 23(c)(1). Fed.R.Civ.P. 23(c)(1). This is a class action under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), together with Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5. The

named plaintiffs have brought this action on behalf of themselves and other purchasers of a 1982 offering by Edward D. Jones & Co. of 15% participating investment certificates due 1992 issued by Energy Management Corporation (EMC). The class consists of those investors who participated in an exchange offer in January, 1984. *See Pinney v. Edward D. Jones & Co., Inc.,* 718 F.Supp. 1419, 1420 n. 1 (W.D. Ark.1989). Much of the factual background concerning the EMC investments was related in the court's earlier opinion and will not be repeated here. *Id.*

The class representatives are James Crawley, a resident of Arkadelphia, Arkansas, and Robert and Dorothy Woodling, residents of Logansport, Indiana. There are approximately 2000 purchasers of the certificates. Of those, approximately 1900 resided at the time of purchase in states where the limitations period for Rule 10b–5 actions is four years or less. In Arkansas the statute of limitations is five years. *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.1970). The question raised by the motion to sever is the appropriate statute of limitations to be applied to nonresident class members. Defendants argue the class members are subject to the limitations period for Rule 10b–5 actions used by federal courts sitting in their home states. It is defendants' contention that the claims of any class members living in Alabama, Arizona, California, Colorado, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Minnesota, Missouri, Montana, Nebraska, North Carolina, Ohio, Oklahoma, Oregon, South Carolina, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, and Wyoming are barred by the statute of limitations and those members should be severed from the class.

Alternatively, defendants argue that, if this court determines that it must apply a single statute of limitations to all class members regardless of where they lived when they purchased the certificates, the court should select the limitations period of the state having the "most significant contacts" with this cause of action rather than the limitations period of the forum. In the event the court chooses this alternative, defendants argue the appropriate statute of limitations is that of Missouri or Colorado.[1]

In response, plaintiffs argue the appropriate statute of limitations is that of the forum state. The court is urged to follow *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.1970) *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). Plaintiffs point out a recent Supreme Court opinion which held a court may constitutionally apply the forum state's statute of limitations to claims of nonresident plaintiffs. *See Sun Oil Co. v. Wortman,* 486 U.S. 717, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). In addition, plaintiffs contend the broad remedial policies of the federal securities laws are best served by longer, not shorter, statutes of limitations.

This is not the first time this court has been faced with the question of the appropriate statute of limitations to be used in actions under § 10(b) and Rule 10b–5, and the court will readily admit that few issues faced by this court over the last several years have given the court more "trouble". The court recognizes that in letters and statements to counsel it has vacillated on this issue, a trait that it hopes and believes is uncharacteristic of this court. After giving the matter a great deal of thought, and after reading every case on the subject cited by counsel and those that could be found by the court through independent research, it is concluded that the court's "problem" is that it is attempting to "make sense" out of an area of the law that simply "makes no sense".

In the first place, it makes no sense to this court that courts should presume that Congress intended a private cause of action when it enacted § 10(b) of the 1934 Act, since the legislative enactment is resoundingly silent in that respect. It is obvious

---

**1.** The prospectus at issue was prepared by EMC's counsel in Colorado and reviewed by Jones in Missouri. Meetings concerning the underwriting of the certificates took place in both Colorado and Missouri.

that, when Congress intended to create a private cause of action, it knew how. It did that in respect to several sections of the Securities Act of 1933 (48 Stat. 894 (1933)), and when it intended to create a cause of action, it appropriately enacted an applicable statute of limitations. In fact, in the Securities Exchange Act of 1934, the very statute in which § 10(b) is located, it created private causes of action in respect to some sections of the statute, and it amended the 1933 limitations statute (§ 13, 15 U.S.C. § 77m) and specified a new statute of limitations for each of the express rights of action it created. Again, in 1938, it added a statute of limitations for § 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b). However, even though it makes "no sense" to this court that § 10(b) creates a private cause of action, the courts said years ago that it did, and the law is far too well-settled in that respect for this court to tinker with it. If that "job" needs to be done, it should be done by a court superior to this one.

Likewise, it makes no sense to this court that even if a § 10(b) private cause of action is assumed, that a state statute of limitations should be adopted rather than the most analogous federal statute such as those adopted by Congress in the 1933 and 1934 Acts. If it is presumed that Congress must have intended a private cause of action when § 10(b) was enacted, why isn't it also presumed that Congress would probably have preferred that one of its statutes of limitation be utilized rather than the myriad of statutes in effect in the states of this union?

The adoption of state statutes of limitation for these causes of action, as was done in *Vanderboom, supra,* and by numerous other courts, is especially troublesome in class actions. In this court's view, application of the Arkansas statute of limitations to class members from around the country who had absolutely no contact with Arkansas and did not even conceivably rely on its laws in any way in making the investments that they made simply "does not make sense". Most of them had absolutely no contact with Arkansas in respect to their investment until they received a notice authorized by this court that a lawyer located here in Arkansas had filed a lawsuit seeking to include them as class members. It appears that many of them, and, in fact, most of them, no longer had a viable cause of action in their home state because the statute of limitations of the state of their residence barred it. It is inconceivable to this court that, just because an Arkansas lawyer happened to file a lawsuit in Arkansas their dead and breathless claim was suddenly and miraculously revived. It appears that many of these claims were not only dead, they had been dead for several years.

It appears clear that the device of a class action authorized by Rule 23 of the Fed.R. Civ.P. was intended to be a procedural method by which multiple claims involving common issues of law and fact could be litigated in one lawsuit, thus avoiding a multiplicity of unnecessary litigation. However, the court does not believe that it was ever intended that this device could affect the substantive rights of litigants, at least to the extent of reviving lawsuits that had long been dead. Instead, a Rule 23 proceeding is a "container" used to hold the claims of all of the class members so that their causes of action could, in one proceeding, be expeditiously and economically litigated, but they should have no better or worse claim in that container than they had before they were lifted into it. If the claim was dead before it was placed in the "jar" it should still be dead after it gets there. This inanimate container should not breath life into it or otherwise make the claim better.

Thus, unquestionably, if this court were writing on a clean slate, it would not apply the statute of limitations of Arkansas to all of the claims irrespective of the fact that most of them had absolutely no contact with Arkansas. Be that as it may, the court has reluctantly concluded that it is not writing on a clean slate and that it is bound to attempt to apply the law as it presently exists irrespective of how muddled, in this court's view, it is. This court does not have the authority to "straighten out" the law in this circuit. If that should

be done, it is, under our system, to be done by the court of appeals for the circuit in which this court sits. For the reasons discussed below, the court has concluded that it is bound by *Vanderboom, supra,* to apply the Arkansas statute of limitations to claims of all of the plaintiffs in this class action matter.

Because 10b–5 is an implied cause of action, there is no limitations period set forth in the 1934 Act. Nor is there any generally applicable federal statute of limitations. Accordingly, federal courts have been forced to fix, as a matter of federal common law, appropriate limitation periods. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 147, 107 S.Ct. 2759, 2762, 97 L.Ed.2d 121 (1987); *Wilson v. Garcia,* 471 U.S. 261, 269, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985); *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 158, 103 S.Ct. 2281, 2287, 76 L.Ed.2d 476 (1983). Generally, the courts have applied the most closely analogous statute of limitations under state law "if it is not inconsistent with federal law or policy to do so." *Wilson v. Garcia,* 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1941–42, 85 L.Ed.2d 254 (1985) (footnote omitted); *Reed v. United Transportation Union,* 488 U.S. 319, 109 S.Ct. 621, 625, 102 L.Ed.2d 665 (1989). The major concern is to find the limitations period that best effectuates "the federal policies at stake and the practicalities of litigation...." *DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294–95.

In *Dingler v. T.J. Raney & Sons, Inc.,* 708 F.Supp. 1044 (W.D.Ark.1989), this court was asked to adopt a uniform federal statute of limitations. It was urged that the holding of *In re Data Access Systems Securities Litigation,* 843 F.2d 1537 (3d Cir.1988) *(en banc), cert. denied,* — U.S. ——, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988) should be adopted. The *Data Access* court

had adopted the federal scheme of limitations set forth in the Securities Exchange Act of 1934. The Third Circuit relying on *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) concluded the limitations period of the 1934 Act provided a closer analogy to 10(b) causes of action than did state statutes of limitations. *Data Access,* 843 F.2d at 1545. In *Dingler* we found that we were bound to apply the law as announced by *Vanderboom,* and we declined to adopt a uniform federal statute of limitations. *Dingler,* 708 F.Supp. at 1054–55.

Earlier in this case, the defendants urged reconsideration of *Dingler* and the adoption of a uniform statute of limitations. *See Pinney v. Edward D. Jones & Co., Inc.,* 718 F.Supp. 1419 (W.D.Ark.1989). The argument was made in the context of a motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P. 56. We declined to adopt a uniform statute of limitations concluding that prior precedent dictated application of the forum state's statute.[2] *Id.* at 1421.

This is the first time that the court has been asked to determine the appropriate statute of limitations to be applied to non-resident class members. Resolution of the problem becomes a highly complex issue because of the class action context of this case.

Judge Easterbrook has succinctly stated the problem thusly:

This is one tottering parapet of a ramshackle edifice. Deciding which features of state periods of limitation to adopt for which federal statutes wastes untold hours. *Tellis v. United States Fidelity & Guaranty Co.,* 805 F.2d 741, 747 (7th Cir.1986) (Ripple, J., dissenting). Never has the process been more enervating than in securities law. There are many potentially analogous state statutes, with

---

**2.** Plaintiffs argue the court's earlier ruling is the law of the case and precludes reconsideration of this issue. However, in the earlier motion the court did not face the issue presently before the court, *i.e.* what statute to apply to non-resident class members. Although the Pinneys are Indiana residents, the arguments of the parties

centered on whether a uniform federal statute of limitations should be adopted and applied rather than the five year Arkansas statute. In fact, in its brief the defendants reserved the right to raise the issue currently before the court.

variations for different kinds of securities offenses and different circumstances that might toll the period of limitations. Both the bar and scholars have found the subject vexing and have pleaded, with a unanimity rare in the law, for help. E.g., Louis Loss, *Fundamentals of Securities Regulation* 1164–75 (1983); Thomas Lee Hazen, *The Law of Securities Regulation* § 13.8 & n. 2 (1985) (collecting authority); *Report of the Task Force on Statute of Limitations for Implied Actions,* 41 Bus.Law. 645 (1986).

*Norris v. Wirtz,* 818 F.2d 1329, 1332 (7th Cir.1987), *cert. denied,* 484 U.S. 943, 108 S.Ct. 329, 98 L.Ed.2d 356 (1987).

As Professor Loss notes, the implication of actions under the securities statutes have resulted in *at least* 500–odd possible answers. L. Loss, *Fundamentals of Securities Regulation* (1988) at 994. *See also* Note, *Statutes of Limitation for Section 10(b) and Rule 10b–5: A New Proposal for Uniformity,* 46 Wash. & Lee L.Rev. 665 (1989).

Given the prevalence of 10b–5 class actions, the court is somewhat amazed at the dearth of reported decisions addressing this issue in a class action context. Many of the cases discussing this issue do so only in the context of whether the possibility of applying diverse statutes of limitations prohibits certification. Few reported decisions contain any real discussion on the issue; rather a statement is made with little or no discussion.

Nevertheless, this court is directly faced with the issue and must reach a resolution in keeping with the precedent currently existing in this circuit. Earlier in a letter to all counsel dated December 22, 1989, the court stated it intended to apply the statute of limitations of the residence of each of the class members in determining whether their claims are time barred. The court then solicited briefs in respect to the proper manner to effectuate the court's ruling.

After having received the supplemental briefs and again reviewing the file and the briefs on this issue, the court has concluded its initial ruling was in error because it would be contrary to the law of this circuit.

On the surface, there appear to be the following options available: 1) adopt and apply a uniform federal statute of limitations; 2) apply the statute applicable in each class members' home state; 3) apply the forum state's statute including its borrowing statute; 4) apply a single statute of limitations by choosing the state with the most significant contacts; and 5) apply the forum state's statute to all class members regardless of their residency. Each option will be addressed in turn.

As already stated, applying a uniform statute of limitations is, in the court's view, the only logical solution to the problem. This would result in a federal limitations period operating to terminate a federally created cause of action. *See Davis v. Birr, Wilson & Co., Inc.,* 839 F.2d 1369, 1370–1376 (9th Cir.1988) (Judge Aldisert concurring). However, as this court has previously noted, it is not free to choose the most logically appealing course of action; rather, the court must ascertain whether prior precedent exists and if it does, the court must apply it to the case before it. *See Pinney v. Edward D. Jones & Co., Inc.,* 718 F.Supp. 1419, 1421 (W.D.Ark.1989); *Dingler v. T.J. Raney & Sons, Inc.,* 708 F.Supp. 1044, 1055 (W.D.Ark.1989). *See also TCF Banking and Sav., F.A. v. Arthur Young & Co.,* 697 F.Supp. 362 (D.Minn.1988). This circuit has clearly held that the applicable statute of limitations in 10b–5 cases is the forum state's blue sky statute. *Vanderboom v. Sexton,* 422 F.2d 1233 (8th Cir.1970), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970).[3]

Absent some indication the Court of Appeals for the Eighth Circuit would adopt a different approach at this time, this court is

---

**3.** Although *Vanderboom* was a class action it appears that all non-resident class members asserting 10b–5 actions had been found to lack standing on that claim. *See City National Bank of Fort Smith v. Vanderboom,* 422 F.2d 221 (8th Cir.1970). Nevertheless, the court can perceive

no basis for limiting *Vanderboom* to nonclass action situations while applying a different rule to class action cases. In fact, such a distinction would only serve to further confuse an already confused area of the law.

not free to in effect overrule circuit court precedent.[4] In the years since the *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) and the *Data Access* opinions several courts have rejected *Data Access* on *stare decisis* grounds. *See Eickhorts v. American Completion and Development Corporation*, 706 F.Supp. 1087, 1098–1102 (S.D.N.Y.1989); *Metropolitan Securities v. Occidental Petroleum*, 705 F.Supp. 134, 138 (S.D.N.Y.1989); *In re Professional Financial Management, Ltd.*, 703 F.Supp. 1388, 1392–93 (D.Minn.1989); *TCF Banking and Savings F.A. v. Arthur Young & Co.*, 697 F.Supp. 362 (D.Minn. 1988); *Marchese v. Nelson*, 700 F.Supp. 522, 524 (D.Utah 1988); *Robin v. Doctors Officenters Corp.*, 686 F.Supp. 199, 206–07 (N.D.Ill.1988). *See also Nesbit v. McNeil*, 896 F.2d 380 (9th Cir.1990); *Durham v. Business Management Associates*, 847 F.2d 1505 (11th Cir.1988) noted the *Data Access* precedent but without further discussion affirmed application of the forum state's statute.[5]

Next is the option urged by the defendants and previously adopted by this court, applying the statute of limitations applicable in the state of residence of each member. On the surface, this option has a great deal of appeal. Absent the class action mechanism it appears unlikely that any of these class members would have chosen Arkansas as the forum for their individual cases. Most of them had absolutely no contact with Arkansas in respect to their investment and could not have brought this case in their home state because of a shorter statute of limitations.

The problem with this, however, is that it ignores the broad venue provisions found in the securities laws. *See* 15 U.S.C.

§ 78aa; 15 U.S.C. § 77v(a). Each of these class members could have, if they wished to do so, came to Arkansas and individually pursued this cause of action. In fact, each could have chosen to forum shop and sue in any state where the defendant is found which has a longer statute than that of the plaintiff's home state. Having said this, however, does not answer the question of which limitations period the forum court would choose to apply. Thus, choosing this option would have the effect of forcing the home state's statute on each member; penalizing the member solely because he or she became a class member.

Defendant contends "[m]ost courts addressing the issue have concluded that the limitations period used by federal courts sitting in the state of residence of the class member should apply." However, the majority of cases cited by defendants involved rulings on class certification issues and whether the possibility of applying varying statutes of limitations prevented certification. On close examination, none of the cases appear to definitely rule on the issue; rather a statement is made without any type of discussion or analysis of the issue. *See Sanders v. Robinson Humphrey/American Express, Inc.*, 634 F.Supp. 1048, 1065 (N.D.Ga.1986), *aff'd in part and rev'd in part on other grounds sub nom, Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988) (declined to certify stating if the court certified the action it must apply the state statute of limitations for every state in which a class member resides *citing Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)); *Dirks v. Clayton Bro-*

---

**4.** Defendants urge adoption of the holding in the *Data Access* case *i.e.*, the one and three year limitation periods set forth in the 1934 Act for express causes of action. In contrast, plaintiffs have referred the court to the recently enacted five year statute of limitations, 15 U.S.C. § 78 t–1(b)(4), enacted as part of the Insider Trading and Securities Fraud Enforcement Act of 1988, 15 U.S.C. § 78t–1(a). This new section amends the 1934 Act and creates, for the first time, an express cause of action for certain violations of Rule 10b–5. Plaintiffs refer the court to this

new section for the proposition that the broad remedial policies of the 1934 Act will be better served by a longer statute of limitations.

**5.** Even if this court were inclined to adopt a uniform federal statute of limitations, this would not definitely resolve the issue. The question of retrospective application of the newly adopted limitations period would need to be resolved. *See e.g. Kayne v. Paine Webber, Inc.*, 703 F.Supp. 1334 (N.D.Ill.1989).

*kerage Co. of St. Louis, Inc.*, 105 F.R.D. 125, 132 (D.Minn.1985) (in ruling on a motion for class certification court noted the need to apply a variety of statutes of limitations did not mean individual issues predominated); *Umbriac v. American Snacks, Inc.*, 388 F.Supp. 265, 272 (E.D.Pa. 1975) (although statutes of limitation may differ as to individual class members this does not prevent certification).

Yet other courts have reached the same conclusion by adopting the forum state's borrowing statute to determine the 10b–5 limitations period applicable to a non-resident party. *See Industrial Consultants, Inc. v. H.S. Equities*, 646 F.2d 746, 747 (2d Cir.1981), *cert. denied*, 454 U.S. 838, 102 S.Ct. 145, 70 L.Ed.2d 120 (1981); *Robertson v. Seidman & Seidman*, 609 F.2d 583, 586 (2d Cir.1979). Normally a court utilizing this method looks to the state where the cause of action accrues. "[A] cause of action for fraud under Section 10(b) of the Exchange Act arises where 'its economic impact is felt, normally the plaintiff's residence.'" *Arneil v. Ramsey*, 550 F.2d 774, 779 (2d Cir.1977), *quoting, Sack v. Low*, 478 F.2d 360, 365 (2d Cir.1973); *Robertson v. Seidman & Seidman*, 609 F.2d 583, 586 (2d Cir.1979) (accrue in the state in which the plaintiff resided at the time of the alleged injury). *See also In re Clinton Oil Co. Securities Litigation*, Fed.Sec.L.Rep. (CCH) Par. 96,015, 1977 WL 1009 (D.Kansas 1977) (transferee court looked to laws of the various transferor forums including their borrowing statutes).

As defendant points out, Arkansas does not have a borrowing statute as such but has adopted the Uniform Conflict of Laws—Limitations Act. *See* Ark.Code Ann. § 16–56–201 *et seq.* (1987). The Act treats limitation issues as substantive. Leflar, *The New Conflicts—Limitations Act*, 35 Mercer L.Rev. 461, 479 (1984). *See also* prefatory note to the Commentaries,

Uniform Conflict of Laws—Limitations Act.

Ark.Code Ann. § 16–56–202 provides:

(a) Except as provided by § 16–56–204, if a claim is substantially based:

(1) Upon the law of one (1) other state, the limitation period of that state shall apply; or

(2) Upon the law of more than one (1) state, the limitation period of one (1) of those states, chosen by the law of conflict of laws of this state, shall apply.

(b) The limitation period of this state shall apply to all other claims.

The statute directs application of another state's limitation period only when the claim is substantially based on the law of another state. The claim made herein, of course, is not based on state law. Arguably, application of this statute would lead to the use of Arkansas law. Ark.Code Ann. § 16–56–202(b).[6] Other borrowing statutes look to where the cause of action arose. *See In re Clinton Oil Co. Securities Litigation*, Fed.Sec.L.Rep. (CCH) Par. 96,015 (D.Kansas 1977).

If the task of the court is to borrow "the most suitable statute or other rule of timeliness from some other source," it does not appear that the state of residence of each member has such a significant interest in the outcome of this case so as to reach out and cut off a resident's right to litigate a federal cause of action in Arkansas and to cause a federal court to apply numerous statutes of limitations in federal class actions. "[I]t is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies." *Occidental Life Ins. Co. v. EEOC*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454–55, 53 L.Ed.2d 402 (1977). Surely, it will "frustrate or interfere with the implementation of national policies" for this court to attempt to apply well over 30 separate state statutes of limitation.

---

6. Commissioners' comment to section 1 (Ark. Code Ann. § 16–56–201) provides "[u]nder the definition of 'state,' the United States, though included in similar definitions in other uniform acts is not included here because federal law will control federal limitations problems." Defendants argue the court should borrow the forum state's common law principles if no applicable borrowing statute exists; thus, following the intent of the Uniform Act by applying the law of the state with the most significant relationship to the parties and the occurrence.

Yet another approach was taken by the court in *State Teachers Retirement Board v. Fluor Corp.,* 80 F.R.D. 142 (S.D.N.Y. 1978). In that case the court noted applying "the limitation period of the state of each potential class member would make this suit, as well as almost all 10b–5 class actions, unmaintainable." *Id.* at 144. The court concluded it would not:

> [A]pply the limitation period of the residence of each potential plaintiff. Instead, the applicable limitation period will be but one, determined by such factors as, but not limited to,
>
> (i) the place where the actual stock transactions took place;
>
> (ii) the state of incorporation and principal place of business of Fluor and the other defendants; and
>
> (iii) the place where the alleged fraud occurred.

*Id.* at 145. *See also Raymond v. Miller & Schroeder Municipals, Inc.,* Fed.Sec.L. Rep. (CCH) Par. 99, 714, 1983 WL 1419 (D.Minn.1983) (noting the reasoning in *State Teachers* was persuasive); *In re National Student Marketing Litigation,* Fed. Sec.L.Rep. (CCH) Par. 97,926, 1981 WL 1617 (D.D.C.1981) ("[I]n some circumstances a court should look at the essence of the action and determine which jurisdiction has the most significant contacts with the issues before deciding which statute of limitations to apply.").

Although this approach attempts to resolve the issue, it does so by utilizing factors which are not easily applied in a nationwide class action. For example, if you had class members from all fifty states each having purchased the security and received his prospectus in his home state, all fifty states would have identical contacts with the transaction.[7] Thus, in this hypothetical situation the court's choice would necessarily be that of the state of incorporation of the defendants. The state of incorporation may have had no connection whatsoever with the transactions at issue.

Finally, the last approach is that of applying the forum state's statute to all class members regardless of the members' residency. In *Nortek, Inc. v. Alexander Grant & Co.,* 532 F.2d 1013 (5th Cir.1976), *cert. denied,* 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977) the court rejected the argument that the forum state's statute should not be applied because not all parties were residents of the forum state. The court relying on prior precedent stated "the forum state's statute of limitations applies without regard to the residency of any of the parties." *Id.* at 1015. This case was not a class action. In *Holton v. Rothschild,* 118 F.R.D. 280, 283 (D.Mass.1987), a class action, the court stated without any discussion that "the statute of limitations is that of the forum state. It matters not where the class members reside." *Id.* at 283.

Having come full circle, the court concludes *Vanderboom v. Sexton* requires application of the forum state's statute to all 10b–5 actions whether or not there are non-resident parties.[8] The court believes this rule also applies in the class action context. The law of this circuit has been to uniformly and consistently apply the forum state's statute of limitations. Despite the need to alter this rule, the court concludes the task must be left to the legislature or to a federal court superior to this one. To do otherwise, "would serve only to add another variable to the already overly complicated search for an appropriate period of limitations." *McNeal v. Paine, Webber, Jackson & Curtis, Inc.,* 598 F.2d 888, 892

**7.** Surely the court's decision should not turn on the number of class members residing in each state. If one member resided in each of 49 states with two members residing in Alaska would the court here in Arkansas apply the Alaska statute to all individuals?

**8.** Plaintiffs assert that the Eighth Circuit upheld a jury verdict in a 10b–5 class action where the forum state's limitations period was applied to non-resident class members. *Citing Harris v.*

*Union Electric Co.,* 787 F.2d 355, 360 (8th Cir. 1986), *cert. denied,* 479 U.S. 823, 107 S.Ct. 94, 93 L.Ed.2d 45 (1986). Plaintiffs argue that *"Harris* confirms that the Eighth Circuit has not applied a different rule in determining the applicable statute of limitations in a multi-state 10b–5 class action." However, a review of the reported decision does not indicate the residency of the class members.

n. 8 (5th Cir.1979). Therefore, the court finds that the five-year limitations period of Arkansas governs the claims of all class members.

### ORDER

On this 16th day of March, 1990, upon consideration of the motion to sever filed herein on behalf of the defendants, the court finds for the reasons set forth in a memorandum opinion of even date that said motion should be and hereby is denied.

IT IS SO ORDERED.