AMERICAN GENERAL FIRE & CASU-
ALTY, a subsidiary of American Gener-
al Corporation, Plaintiff,

v.

WAL–MART STORES, INC., d/b/a
"Sam's Wholesale Club" and Black
& Decker (U.S.) Inc., Defendants.

Civ. No. 91–2222.

United States District Court,
W.D. Arkansas,
Fort Smith Division.

April 10, 1992.

Paul D. Capps, Bailey, Trimble, Capps, Lowe, Sellars & Thomas, Little Rock, Ark., Steven H. Beadles, Knox Law Firm, Dallas, Tex., for plaintiff.

O. Ben Core, Daily, West, Core, Coffman & Canfield, Robert E. Hornberger, Shaw Ledbetter, Hornberger, Cogbill & Arnold, Fort Smith, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This action is before the court on a motion to dismiss or for change of venue and for summary judgment filed on behalf of the defendants, Wal–Mart Stores, Inc., d/b/a "Sam's Wholesale Club" and Black & Decker (U.S.) Inc.

Plaintiff American General Fire & Casualty filed its complaint in this court on October 24, 1991. The complaint alleges that sometime prior to December 4, 1988

one of plaintiff's policy holders, John Travis, or a member of his household, purchased a Black & Decker Automatic Shutoff Iron, Model No. F410AL, from a Sam's Wholesale Club outlet in Baton Rouge, Louisiana. It is alleged that the iron was designed, manufactured, sold, and placed into the stream of commerce by Black & Decker, and that the iron was transported to a Wal-Mart warehouse in Bentonville, Arkansas before being delivered to the Baton Rouge store. Plaintiff asserts that on December 4, 1988 the automatic shutoff feature of the iron failed to function properly, that as a result of this failure a fire was ignited in the insured's home, and that as a result of the fire plaintiff was obligated to pay the insured the sum of $69,-319.55. Pursuant to the provisions of a Subrogation Agreement dated February 2, 1989, plaintiff became the subrogee of the insured and has brought this action to recover the above sum, plus costs, from the defendants. Jurisdiction is based on diversity of citizenship.

Defendants' motion raises three issues. First, defendants assert that this court lacks jurisdiction over separate defendant Black & Decker. Second, defendants argue that even if this court determines that it has jurisdiction over Black & Decker, it should transfer this action to the appropriate United States District Court in the State of Louisiana under the doctrine of *forum non conveniens*, which is codified at 28 U.S.C. § 1404. Finally, defendants argue that plaintiff's claim is barred by the applicable statute of limitations.

## I. *Statute Of Limitations*

Logically, the statute of limitations issue should be addressed first. The parties agree that Ark.Code Ann. § 16-56-202 (1987) applies to this action. That statute provides in pertinent part:

---

1. Louisiana Civil Code, Article 3492, provides that: "Delictual (tort) actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

2. The other states are Colorado, North Dakota, Oregon, and Washington. *See* Colo.Rev.Stat. §§ 13-82-101 et seq.; N.D.Cent.Code §§ 28-

---

(a) Except as provided by § 16-56-204, if a claim is substantially based:

(1) Upon the law of one (1) other state, the limitation period of that state shall apply. . . .

There appears to be no dispute among the parties that the substantive law of the State of Louisiana applies to this case. Defendants argue that the above statute requires this court to apply the Louisiana limitations period of one year.[1] Since this action was not filed within that one year period, defendants conclude that it is time-barred and should be dismissed.

Plaintiff argues that the "escape clause" provided by Ark.Code Ann. § 16-56-204 should be applied in this case. That statute provides:

If a court of competent jurisdiction determines that the limitation period of another state, applicable under §§ 16-56-202 and 16-56-203, is substantially different from the limitation period of this state and has not afforded a fair opportunity to sue upon, or imposes an unfair burden in defending against the claim, the limitation period of this state shall apply.

The applicable Arkansas statute of limitations is three years. Ark.Code Ann. § 16-116-103 (1987). Plaintiff argues that the one year limitations period of the State of Louisiana has not afforded it a fair opportunity to sue, and that the Arkansas limitations period should be applied.

Plaintiff notes that Arkansas is one of five states to adopt the Uniform Conflicts of Law Limitations Act, having done so in 1982.[2] It claims that there have only been three reported decisions dealing with the provisions of that act, and none of those decisions have addressed the issues raised in defendants' motion.[3]

█ The court believes that under the facts of this case the three year statute of

---

01.2-01 et seq.; Or.Rev.Stat. §§ 12.410 et seq.; Wash.Rev.Code Ann. §§ 4.18.010 et seq.

3. The cases cited by plaintiff are *Perkins v. Clark Equipment Company*, 823 F.2d 207 (8th Cir. 1987); *Pinney v. Edward D. Jones & Company*, 735 F.Supp. 915 (W.D.Ark.1990); and *Brown v. Globe Union*, 661 F.Supp. 1188 (D.Colo.1987).

limitations of the State of Arkansas should be applied. Three factors have influenced the court's decision. First, it is apparent that the drafters of the Uniform Conflict of Laws Limitations Act chose language which would give courts a measure of flexibility in choosing the appropriate limitations period in cases of this type. As plaintiffs observe, the 1957 Uniform Limitations on Foreign Claims Act required the application of the shorter of two limitations periods in conflict situations. That act failed to gain acceptance, and as the Historical Note to the newer Uniform Act makes clear, the drafters wanted to avoid the harshness of the older act. Thus, while the general rule provided by Ark.Code Ann. § 16–56–202(a)(1) would favor the application of the Louisiana limitations period, that result is in no way mandated by the language of the statute or the policy underlying that language.

Second, the court finds that the limitations period of the State of Arkansas is "substantially different" than the comparable limitations period of the State of Louisiana. Louisiana is one of only three states to employ a one year limitations period for tort, product liability, or property damage claims.[4] This period is the shortest in the nation. As plaintiff observes, more than half of the fifty states have a limitations period of three years or longer, with seven states having the longest period of six years. The court believes that a three year limitations period is substantially different than a one year period, and that this requirement under the "escape clause" provision has been satisfied.

Third, and most important, the court believes that the one year limitations period of the State of Louisiana, under the facts of this case, does not afford plaintiff a fair opportunity to sue. Plaintiff points out

that Louisiana law imposes an obligation on insurance companies to investigate claims and pay them promptly or face possible penalties. In a case involving a fire loss it is not unreasonable for an insurer to spend some period of time on investigation before making a decision on whether to pay a claim. In addition, it may take even more time before the insurer can make a considered decision on whether to pursue a subrogation action.

Federal Rule of Civil Procedure 11 imposes certain obligations on the attorney representing a prospective plaintiff, and an attorney who fails to conduct a reasonable investigation before filing suit risks facing sanctions. In addition, sound judicial policy favors giving potential litigants the opportunity to assess their situation, with an eye toward heading off frivolous or baseless suits, rather than forcing them to file prematurely or risk losing the opportunity to pursue their claims. In a case of this nature, if the one year statute is imposed, potential plaintiffs might find it necessary to precipitously file suit before an investigation is completed or before settlement negotiations are instituted or completed simply because it is necessary to protect themselves, or for the plaintiff's lawyer to protect himself. Obviously, this is not a good result.

In this case, defendants argue that the one year limitations period gave plaintiff plenty of time to file. In support of this contention defendants submit as Exhibit "A" to their reply a portion of plaintiff's claim file.[5] Documents from that file indicate that plaintiff's insured suffered his loss on December 4, 1988, and that his claim was paid on February 2, 1989. Defendants also point out that in a letter from plaintiff to Corporate Service Inc., the

4. The other states are California and Kentucky. *See* Cal.Civ.Prac.Code § 340 (West 1991); Ky. Rev.Stat. § 413.140 (1991).

5. This court does not normally accept reply briefs and will not consider them unless leave has been obtained to file a reply. In this case, counsel for defendants represented to the court that a reply was warranted because he had obtained certain documents through discovery pertaining to the statute of limitations issue

which were not available to him when his original brief was filed. Consequently, defendants were granted leave to file a reply. However, the court has considered only the material pertaining to the statute of limitations issue in ruling on the motions before it. The remainder of the reply deals with the personal jurisdiction and venue issues and contains no recently-obtained materials.

claims representative for Wal–Mart, dated January 31, 1989 plaintiff gave notice of its intent to pursue a subrogation claim against defendants. They conclude that plaintiff had approximately ten months to file suit from the date of that letter, and that they simply failed to do so.

The court does not believe that the documents submitted by defendants from plaintiff's claim file show that plaintiff was prepared to file suit in January of 1989. Defendants neglect to discuss the last full paragraph of the January 31 letter from plaintiff to Corporate Service, which reads as follows:

> We have retained possession of the iron in question. We will delay any additional testing on the iron for forty-five (45) days in order to give you time to respond to this letter. It is therefore important that this be given your immediate attention and necessary reference to other departments made as soon as possible.

Corporate Service responded by letter dated March 15, 1989. In pertinent part, that letter states:

> Our office has been notified of a problem which your insured experienced with a product purchased from Wal–Mart Stores, Inc. Acting on your behalf, we have notified the manufacturer, who will initiate their own investigation. Enclosed you will find a copy of that notification letter.
>
> You should be contacted by their office in a reasonable length of time, ranging from ten to fourteen days. If you have not heard from them within that time, the name of the person for you to contact is on the heading of the enclosed letter.

Black & Decker responded to the March 15 letter from Corporate Service by letter dated March 29 and received by plaintiff on April 3. That letter states that "[t]his matter has been referred to our insurance carrier and you should be contacted by them in the near future." There are no documents in the Exhibit to indicate what happened between the time the matter was referred to Black & Decker's carrier and this action was filed.

The court believes that, rather than supporting defendants' position, the above-described documents show why the one year limitations period is unreasonable under the facts of this case. As of April 3, 1989 this matter had progressed only to be point of being referred to Black & Decker's insurance carrier. Assuming that Black & Decker's carrier conducted its own investigation—which is a reasonable assumption—it could have been weeks or possibly even months before plaintiff knew whether its claim would be paid by the carrier. There is no indication in the record that any of the parties, or their insurance carriers, delayed matters unnecessarily in the handling of this claim. However, given the number of steps involved in processing the claims of both plaintiff's insured and plaintiff, it is obvious that a considerable amount of time would inevitably pass before plaintiff could responsibly determine that a law suit was appropriate and then file that suit.

While the court does not believe that a one year limitations period is inherently unreasonable or unfair, under the circumstances of this case it clearly imposes a heavy burden on an insurance carrier in plaintiff's position to investigate the fire loss claim, resolve it, give notice of its subrogation claim to the appropriate entity, negotiate, and prepare to file a subrogation action within one year of the date of the incident underlying the suit. It would have been *possible* for plaintiff to file suit within that period. However, the test is not whether plaintiff could possibly have filed a complaint within a year. Rather, it is whether plaintiff had a "fair opportunity" to sue within one year. The court does not believe that plaintiff had a fair opportunity, and as a result the provisions of Ark.Code Ann. § 16–56–204 must be applied.

If the "escape clause" is to have any meaningful application, it would have to be in a situation of this type where the plaintiff faces both a comparatively short limitations period and structural barriers to filing which are difficult to overcome within that period. In this case, those barriers are the aforementioned investigation requirements imposed by both state and fed-

eral law. The court comes to this conclusion reluctantly because it does not want to create an exception that swallows the general rule. None the less, this appears to be the type of situation the drafters of the Uniform Act had in mind when they created an exception to the general rule. The court therefore concludes that plaintiff's cause of action is not time-barred under the applicable statute of limitations of the State of Arkansas.

## II. *Personal Jurisdiction*

■ Defendant Black & Decker argues that this court does not have personal jurisdiction over it and that it should therefore be dismissed from this action. The gist of Black & Decker's argument is that under Ark.Code Ann. § 16–4–101(C) this court lacks jurisdiction because plaintiff's claims do not "arise" from Black & Decker's contacts with the State of Arkansas. Rather, plaintiff's action is based on events which occurred in Louisiana, with Black & Decker's only relevant Arkansas relevant contact being the fact that the iron which purportedly caused the fire that destroyed the insured's home passed through a Wal-Mart warehouse in Bentonville prior to its sale. After a review of case law, which will not be repeated here, defendants conclude that "[t]he cases cited ... can all be summarized into the proposition that, under the Arkansas Long Arm Statute, the contacts between the Defendants and [the] forum State must be more than antecedent, and more than incidental to the injury; the Plaintiff's injury must arise out of the Defendants' Arkansas contacts." Defendants' Brief at 4.

Plaintiff disputes defendants' contention that this court's jurisdiction over Black & Decker is based *solely* on Ark.Code Ann. § 16–4–101(C)(1)(a–c). Plaintiff points out that Ark.Code Ann. § 16–4–101(F) provides that "[a] court of this state may exercise jurisdiction on any other basis authorized by law." Thus, subsection (C) of the Long Arm Statute is not the only potential basis for this court's jurisdiction over Black & Decker. Plaintiff also notes that it is "well established ... that the purpose of the [Arkansas Long Arm] statute ... was to

permit courts in Arkansas, including federal courts, to exercise in personam jurisdiction to the furthest limits permitted by due process of law...." Plaintiff's Response and Brief at 3, citing *Martin v. Kelley Electric Company*, 371 F.Supp. 1225, 1227 (E.D.Ark.1974). Due process requires that a nonresident defendant have certain "minimum contacts" with the forum state. *International Shoe Company v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In light of this requirement, plaintiff argues that "where a nonresident defendant purposefully avails itself of the privilege of conducting activities in the forum state and engages in systematic contact, jurisdiction exists even if the cause of action arises from conduct unrelated to the forum state." Plaintiff contends that Black & Decker admits in its Answer to systematic contacts with the State of Arkansas, and cites *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) and *Perkins v. Benguet Consolidated Mining Company*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1951) in support of its argument that jurisdiction is proper in this court.

The court agrees with plaintiff. Black & Decker's argument is based, in part, on the incorrect assumption that Ark.Code Ann. § 16–4–101(C) is the only possible basis for this court's jurisdiction. That is clearly incorrect. Moreover, the case law relied upon by Black & Decker can be distinguished from the instant case on the basis of the nature and extent of contacts with the forum state. There is no question that Black & Decker regularly does business in Arkansas and that as a result it has availed itself of the benefits and protections of Arkansas law. Black & Decker could reasonably expect to be hailed into an Arkansas court, and the basis for the Arkansas court's jurisdiction need not be coextensive with the basis for the cause of action. Black & Decker's motion to dismiss for lack of personal jurisdiction will be denied.

## III. *Venue*

■ Defendants argue that if this court determines that it has jurisdiction, which it has, it should transfer this action to the

appropriate United States District Court in the State of Louisiana under the doctrine of *forum non conveniens*, 28 U.S.C. § 1404. Defendants note that this action could have been brought in that district originally, and assert that it should be transferred "for the convenience of the parties and witnesses, and in the interest of justice...." Defendants' Brief at 7. Specifically, they argue that:

> The Plaintiff's insured and the insured's family, all witnesses in this action, are located in Louisiana. The site of the damages and the insured's household is located there also. The only witnesses from the State of Arkansas would be employees of the Defendant, Wal–Mart, who may be called primarily to discuss the fact that the product passed through Wal–Mart's possession, and the procedures Wal–Mart employs with respect to products it sell.... [M]ost of the witnesses who will testify regarding the facts surrounding the Plaintiff's claims are located in the State of Louisiana.... Therefore, evidentiary and discovery depositions will have to be conducted outside the State of Arkansas, dramatically increasing the costs associated with this cause of action.

*Id.* at 7–8.

In response, plaintiff notes that "[t]here is a strong presumption in favor of the plaintiff's choice of forum." Plaintiff's Response and Brief at 13 (citations omitted). Plaintiff argues that defendants have failed to meet their burden of showing that the balance of interests between the plaintiff's choice of forum and the defendants' interest in a transfer favors defendants.

Professors Wright, Miller and Cooper have written that "[t]he party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover. The emphasis must be on this showing rather than on numbers." 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3851 (2d ed. 1986). Defendants have not done this. Moreover, plaintiff argues that the central issue in this action is "what caused the fire and why." Plaintiff's Response and Brief at 16. While there would undoubtedly be some testimony from Louisiana witnesses concerning the fire, plaintiff asserts that this testimony will be of "qualified value since it is undisputed that a fire occurred.... Instead, the critical testimony will probably come from Defendants' agents and expert(s), and the plaintiff's expert(s), who will testify as to the cause and origin of the fire as well as any defect in the iron." *Id.*

The court believes that defendants have not fulfilled their burden of showing that a transfer of this action to Louisiana is warranted. While it may well be the case that, in terms of sheer numbers, most of the witnesses who are likely to testify at trial would come from Louisiana, that alone is not enough to warrant a transfer. The "key witnesses," as plaintiff points out, are likely to be experts and the court has no way of knowing where those witnesses will come from. In any event, because those experts will be under the control and direction of the parties, there is no reason to believe that either convenience or justice will be furthered by transferring this case to Louisiana. Defendants have the burden of showing that a transfer is appropriate, and they have not fulfilled that burden.

For the reasons stated, defendants' motion to dismiss or for change of venue and motion for summary judgment will be denied by a separate order entered concurrently with this memorandum opinion.

## ORDER

On this 9th day of April, 1992, upon consideration of a motion to dismiss, motion for change of venue, and motion for summary judgment filed on behalf of the defendants, the court rules as follows:

1. Defendants' motion to dismiss is denied.

2. Defendants' motion for change of venue is denied.

3. Defendants' motion for summary judgment is denied.

The rationale for the court's rulings is set forth in a letter to counsel entered concurrently with this order.

IT IS SO ORDERED.